UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA        *        4:10-CR-459-4
                                *        Houston, Texas
VS.                             *
                                *        8:57 a.m.
JOSE FUENTES                    *        January 27, 2016


REARRAIGNMENT


BEFORE THE HONORABLE KENNETH M. HOYT
UNITED STATES DISTRICT JUDGE


**APPEARANCES:**

**FOR THE GOVERNMENT:**
Ruben R. Perez and Jill Stotts
OFFICE OF THE U.S. ATTORNEY
1000 Louisiana, Suite 2300
Houston, Texas 77002
713.567.9347

**FOR THE DEFENDANT:**
Kenneth W. McGuire
McGUIRE LAW FIRM
P.O. BOX  79535
Houston, Texas 79535
713.223.1558


Court Reporter:
Johnny C. Sanchez, RPR, RMR, CRR
515 Rusk, #8004
Houston, Texas 77002
713.250.5581

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-assisted transcription.

THE COURT:  Gentlemen, come forward.

This case is United States of America versus José Fuentes, Cause Number 10-459.  Who is here representing the United States at this time.

MR. PEREZ:  Ruben Perez and Jill Stotts for the United States.

MS. STOTTS:  Good morning, Your Honor.

THE COURT:  That's not Magliolo.  I'm sorry.  What is your name again?

MS. STOTTS:  Jill Stotts.

THE COURT:  Jill Stotts.

MS. STOTTS:  S-T-O-T-T-S.

THE COURT:  Okay.  I'm teasing, because I haven't seen these guys apart in sometime.  They generally show up together.  And representing the defendant?

MR. McGUIRE:  Ken McGuire for Mr. Fuentes, Your Honor.  Good morning.

THE COURT:  Good morning.  And who are you, sir?

THE DEFENDANT:  Pardon?

THE COURT:  What is your name?

THE DEFENDANT:  My name is José Fuentes.

THE COURT:  Mr. Fuentes, it's my understanding that you are here today to enter a plea of guilty pursuant to a plea agreement.  And the plea, as I understand it,

will be charge to conspiracy to harbor aliens.  That would be a violation of federal law.  Do you understand that's the charge for which you are entering a plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Let me make sure that's a single count.  Yes, it's a single count.

MR. McGUIRE:  Your Honor, there's a conspiracy to harbor and transport aliens in the case, which are two separate offenses and single conspiracy charge, but I think the factual basis will show Mr. Fuentes was involved in the transportation part of it.

THE COURT:  All right.  Is that what we're going to be dealing with, conspiracy to harbor and transport illegal aliens?  Let me just say it that way, because what happened is I wasn't reading the plea agreement.  I was reading a data sheet, and it's a shorthand version of what you-all are pleading to.  And I don't need to make a distinction between it was harboring or transporting.  I just need to make sure the record reflects that it's a violation of federal law under Title 8, Sections 1324(a)(1)(A)(v)(I) and (a)(1)(A)(iii) and 1324(a)(1)(B)(i).

I believe those are the statutes that are relevant.  That's your understanding, is it not, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Raise your right hand at this time, please to take an oath.

CASE MANAGER:  Do you solemnly swear that the testimony you are about to give will be the truth, the whole truth and nothing but the truth, so help you God.

THE COURT:  You may lower your hand.

You told me that your name is José Fuentes.  Are you known by any other names?

THE DEFENDANT:  No.

THE COURT:  And you understand that your purpose here is not just to enter a plea of guilty, but to give truthful answers to the questions that would be asked by the Court in this proceeding?

THE DEFENDANT:  Yes.

THE COURT:  And that failing to give truthful answers or misleading the Court in any way intentionally, could result in a greater punishment, or even a separate indictment; correct?  You understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, the charge against you pending is conspiracy to harbor and transport illegal aliens in violation of federal.

Have you had a sufficient time to talk with your attorney about the charge and the facts underlying the indictment in this case?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied that you've had enough time?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any complaints about him, that is, your attorney, that need to be brought to my attention before I take your plea of guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  I take that to mean you're satisfied with the representation that he is and has been providing, and that you're ready to go forward?

THE DEFENDANT:  Yes.

THE COURT:  How old are you?

THE DEFENDANT:  61 years.

THE COURT:  Okay.  And have you been treated for drug addiction or alcohol dependency?

THE DEFENDANT:  No.

THE COURT:  Have you been treated for mental illness?

THE DEFENDANT:  No.

THE COURT:  I recognize -- are you taking any medication today that would have some impact on your ability to reason and understand my questions?

THE DEFENDANT:  No, sir.

THE COURT:  You are a citizen of Mexico?

THE DEFENDANT:  Yes.

THE COURT:  And is that where you got your education?

THE DEFENDANT:  Pardon?

THE COURT:  Is that where you were educated?

THE DEFENDANT:  Yes.

THE COURT:  And how far did you go in school?

THE DEFENDANT:  Eleventh.

THE COURT:  All right.  And so, you read and write the Spanish language and --

THE DEFENDANT:  Yes.

THE COURT:  -- you understand fully what is being said to you by the interpreter; correct?

THE DEFENDANT:  Yes.

THE COURT:  Now, the charge against you is a conspiracy charge.  And essentially it means that the government would need to prove that one or more of you, at least one other person other than yourself, entered into an agreement to harbor and/or transport illegal aliens, that you knew of the unlawful purpose, that you agreed to join it willfully, that is, no one forced or threatened you to join, lead, or be in lead with the other person or persons, and that one of the persons, either yourself or someone else, during the conspiracy, knowingly did an act that is described in the indictment, and that act was in

furtherance of the conspiracy conduct.

Do you understand that?

**(Defendant conferring with Mr. McGuire)**

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  And I think as part of the fact sheet, I've been provided with the elements regarding harboring illegal aliens.  I don't believe the government would need to prove that against you based upon what counsel has just said, but I'm going to state for the record what those elements are because they parallel, or they fit up against the allegations that are made against you specifically, and that has to do with transporting illegal aliens.

And those elements would require that the government prove that aliens entered and remained in the United States in violation of law; that you concealed, harbored, sheltered from detection the aliens within the United States; that you either knew or acted in reckless disregard that the aliens were entering and remaining in the United States in violation of the law; and that you conducted, or should I say, that your conduct, should I say, tended to facilitate, make easier, the aliens' ability to remain in the United States.

That's what the government would be proving or attempting to prove under the indictment charged

of conspiracy to harbor and transport illegal aliens in violation of federal law.

Do you understand that's the full range of evidence that would be presented?

THE DEFENDANT:  Yes.

THE COURT:  The penalty associated with conviction for any offense under this statute would be a term of confinement of not more than ten years, and/or a fine not to exceed $250,000.  Any term of confinement may be followed by a term of supervised release.  That's according to whether the Court wants to impose a term of supervised release.  Supervised release is a period of time, let's say up to three years, during which the Court would -- let me make sure it's three, at least three. Maximum three years.  It's a term a period of time within which the Court would have supervision over you and will be able to instruct you and direct you into how you ought to conduct yourselves.  And one of them would be not to violate federal or state law.  You may not be, even if I impose that period of supervision, you may not ever serve it, because the United States has a right under its own statutes to deport you from the United States.  That would be an option that the immigration and Homeland Security aspect of the government would be engaged in.  Not myself. But you need to know not just that there is punishment of

confinement ahead of you potentially, but also that you could be deported from the United States even though that's not a part of the punishment in this case.  Understood?

THE DEFENDANT:  Yes.

THE COURT:  Now, if you are supervised here in the United States, if you are here by special permission or whatever reason, you are under the authority, supervision should I say, of this Court, which means that you would have to report to a probation officer and follow the instructions given by that probation officer during your term of, or tenure here in the United States.

Do you understand that as well?

THE DEFENDANT:  Yes.

THE COURT:  And, finally, there is a $100 special assessment that would be due and payable in this case in addition to any fine that might be imposed.  Court cost of $100.  Understood?

THE DEFENDANT:  Yes.

THE COURT:  So, have I said anything to you at this point, anything that would cause you to change your mind about entering this plea of guilty?

THE DEFENDANT:  No.

THE COURT:  You discussed these matters with your attorney, have you not?  I mean, what I'm saying to you is not new; you've heard this in a discussion with your

attorney, have you not?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Now, he may have said this to you as well.  He may not have said it the way I'm going to say it, but here is what I'm getting ready to tell you.  That is your rights under the Federal Constitution, although not a citizen, you are entitled to the same rates as a citizen under the Federal Constitution.

Those rights are under the Fourth, Fifth and Sixth Amendments to the Federal Constitution.  And they permit you to challenge the government's case against you for illegal searches or seizures, or prosecution that should not go forward against you.  That's the Fourth Amendment.  Fifth Amendment is your right to remain silent, that is, not give testimony against yourself.  Confessing here in court is a waiver of that right.

The Sixth Amendment is your right to have a trial by jury and to have 12 or more people, at least 12 people, decide whether the government has approved its case against you.  And, obviously, if it fails to do that, the jury would say that, you would be released or permitted to walk away from this case.  Understood?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you're waiving these rights by entering a plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  And is that what you want to do?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, you've had an opportunity to discuss this matter for sometime now.  This has been going on for several years.  You've had an opportunity to discuss this matter with him, have you not?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you satisfied that he understands the nature of the charge pending against him?

MR. McGUIRE:  I have.

THE COURT:  And the consequences of entering a plea of guilty?

MR. McGUIRE:  Yes, sir.

THE COURT:  Is it your opinion, having made your assessment of all the facts, discussed it with him, that a plea of guilty is in his best interest in this case?

MR. McGUIRE:  I believe so, Your Honor.

THE COURT:  Is he mentally competent to enter a plea of guilty?

MR. McGUIRE:  I believe he is.

THE COURT:  I'm going to now turn to the United States prosecutor.  Are you going to be doing this, Mr. Perez?

MR. PEREZ:  Yes, Your Honor.

THE COURT:  I'm going to turn to Mr. Perez in this matter and ask him to state for the record what the factual basis is in summary fashion, underlying this indictment.  That's the basis upon which you'll be entering a plea of guilty.  And as well, he's going to tell me what the basis -- not what the basis -- summarize what the terms of the plea agreement are.  Listen carefully.

MR. PEREZ:  Your Honor, the terms of the plea agreement are that if the defendant pleads guilty to Count 1 of the indictment, at the time of sentencing, the United States agrees not to oppose the defendant's anticipated request to the Court and the United States Probation Department, that he receive a two-level downward adjustment in the guidelines.  Should the defendant accept responsibility as contemplated by the sentencing guidelines, if the defendant qualifies for an adjustment under the United States Sentencing Guidelines § 3E1.1(a), and the defendant's offense level is greater than 16, the United States may move for an additional one-level downward adjustment based on the timeliness of the plea, or the expeditious manner in which the defendant provides complete information regarding his role in the offense.

The agreement also carries a potential for a 5K1.1 for substantial assistance.  The defendant waives his right to appeal.  Also waives his right to collaterally

attack his conviction.

THE COURT: All right. Let me stop you there. Are you getting ready to go into the statement?

MR. PEREZ: Yes, Your Honor.

THE COURT: Let me just ask, counsel: Is this consistent with your understanding in the plea negotiations that you've entered into with the government?

MR. McGUIRE: Yes, Your Honor.

THE COURT: And you know nothing different, do you, Mr. Fuentes? Is this all that you understand your plea agreement to -- well, by all, I don't mean all. There are a lot of pages there. But is this the substance of what you understand your plea agreement to be?

THE DEFENDANT: Yes.

THE COURT: No one has promised you anything that's not written in that document, have they?

THE DEFENDANT: No.

THE COURT: All right. And that's the same?

MR. McGUIRE: That's correct, Your Honor.

THE COURT: All right. Proceed, Mr. Perez.

MR. PEREZ: Yes, Your Honor.

Your Honor, if this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant's

guilt.

Between 2004 and November 2006, the defendant participated in a conspiracy being operated by Wilmer Rene Duran, co-defendant in this case.

The object of the conspiracy was to harbor and transport illegal aliens into and throughout the United States.

This defendant worked for and was paid by Wilmer Rene Duran, who was the owner of Tranportes Junior's who operated the warehouse in Houston, Texas, where aliens were held until they were to be transported across the United States.

The government's evidence would prove that the aliens were from various countries and were smuggled into the United States through Mexico and transported to a warehouse in Houston, Texas.

The government's evidence would prove that Duran employed co-defendants Efrain Rodriguez and Jose Bolanos to guard the aliens and hold them at the Houston warehouse until they made the smuggling payment.

After that payment was made, Duran arranged with various drivers to transport the illegal aliens to locations throughout the United States outside the State of Texas.

Beginning approximately 2004, Duran asked

the defendant to work for him as a driver.

Defendant agreed to drive passengers from Houston, Texas to locations throughout the United States.

Co-defendant Duran called the defendant when he needed the defendant to transport persons from the Houston warehouse to locations outside of Texas.

On each occasion that the defendant drove for Duran, Duran provided a van filled with passengers and a manifest for the trip.

The manifest identified each passenger, their destination, contact information for their family, and what, if any, amount of money was still owed upon delivery of the passenger.

The payment amount of the manifest was listed in code and did not represent the true amount owed by the family members.

In order to determine the true amount owed, defendant was to drop the first number and added a zero to the end of the number.  For example, the manifest said the family owed $250 for transportation, the actual amount the defendant was to collect was $500.  The defendant collected the money owed each alien passenger, and gave the money to Duran upon his return from each trip.

Based on all the circumstances, the defendant had reason to believe that the passengers were

illegal aliens.

Upon his return from his last trip, the defendant went to the warehouse located on Ashcroft Drive in Houston in order to deliver to Duran the money collected and receipts for expenses.

Upon arriving at the warehouse, the defendant followed Duran who directed the defendant to go to the back of the warehouse where co-defendant Bolanos was barbecuing.

A younger man who worked for Duran approached the defendant and told the defendant to follow him so he could show the defendant something.

The younger man opened the door, he showed the defendant a room where several men were laying on the ground naked and appeared to have been severely beaten.

All the beaten men had their heads covered with a plastic bag.  The defendant only saw one man move and did not know if the other men were dead or live.

The defendant immediately turned away and looked back at Duran and others who were still near the barbecue.

The younger man told the defendant if they had beaten the men?  The defendant turned his receipts over to Duran, received payment for his trip, and warned Duran that the men could suffocate with the bags over their head.

THE COURT:  All right.  Did you hear that, Mr. Fuentes?

THE DEFENDANT:  Yes, sir.

THE COURT:  Does that -- is that what you understand the facts to be, and specifically what your involvement may have been in this conspiracy?

THE DEFENDANT:  Yes, sir.

THE COURT:  Anyone force or threaten you in any way to transport and/or harbor aliens here in the United States?

THE DEFENDANT:  No.

THE COURT:  You did this of your own freewill, obviously for money or as been stated?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, do you know of any reason why your client should not enter a plea of guilty to the charge of conspiracy to transport and harbor aliens in violation of federal?

MR. McGUIRE:  I do not, Your Honor.

THE COURT:  Then I ask you:  As it relates to the charge of conspiracy to transport and harbor aliens in the United States, how do you plead to that charge, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  You have before you -- I believe

Mr. McGuire might be looking at it now -- a document that I believe you-all have negotiated with the U.S. Attorney's Office.  I'd like for you to satisfy yourself that it is the document that you have discussed with your attorney. And if it is, please execute that document at this time.

                    **(Complied with request)**

                    THE COURT:  I gather after the case manager takes a look of all signatures, we'll go ahead and take your affirmation of that document.

                            Please raise your right hand at this time and affirm your signature.

                    CASE MANAGER:  Have you read or had read to you the plea agreement form that you have just signed?

                    THE DEFENDANT:  Yes.

                    CASE MANAGER:  Are the matters contained in the form true and correct to the best of your knowledge?

                    THE DEFENDANT:  Yes.

                    CASE MANAGER:  Have you signed it of your own freewill?

                    THE DEFENDANT:  Yes.

                    CASE MANAGER:  Thank you.

                    THE COURT:  You may lower your hand.

                            One of the things I noticed Mr. Fuentes, about this plea agreement is that you have, or you have agreed to the factual basis for the guilty plea that is

stated on Pages 7 and 8 of the agreement.  And so, the Court is certainly accepting that as part, if not -- at least as part of the basis for the plea of guilty here.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Based on your plea of guilty, the Court makes the following findings:  First that you're mentally competent to enter this plea of guilty; that a factual basis exists for the indictment that was brought against you; that you're entering this plea of guilty freely and voluntarily, that is, you understand the nature of the charge pending against you; and you understand the consequences of punishment that is associated, as well as other consequences that might result from this plea of guilty.

Based on your plea of guilty, the Court finds you guilty as charged in the indictment, and the Court is going to reset this case until April 18, 2016, at 10:00 a.m. for sentencing.

A presentence investigation report will be prepared, and Mr. McGuire will be able to accompany you during the interview process.  Whatever the circumstances might be regarding other obligations you have with the U.S. Attorney's Office, I would expect Mr. McGuire to keep us posted as well so that if this date needs to change or be

move forward, we get some reasonable explanation.  We're not interested in resetting it every other month, as to how long this might be pending or outstanding.  But from your perspective, Mr. Fuentes, the first date will be the date of April 18th, and we'll work our way through that or up to that date and perhaps after that date if necessary.  So we're reset to April 15, 2016, at 10:00 a.m.

Anything else, counsel?

MR. PEREZ:  Not on behalf of the United States, Your Honor.

MR. McGUIRE:  Not from the defendant, Your Honor.

THE COURT:  Do you have any questions, sir?

THE DEFENDANT:  No, sir.

THE COURT:  Now, I gather you're on bond; correct?

THE DEFENDANT:  Yes.

THE COURT:  And this is an arrangement and agreement that you have with the U.S. Attorney, I gather, in terms they have no opposition to that, as well as an agreement and commitment to the Pretrial Services Department that operates for me in this building.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  And you understand, further, that

your plea of guilty doesn't change anything?  You still have the obligation to report and comply with all of the conditions that have been set forth in that promise that you made that you would be available and comply with the law.  You understand that as well?

THE DEFENDANT:  Yes.

THE COURT:  So beyond that, sir, you need to simply report to them as to what has occurred today, and if they have some additional instructions for you, they'll let you know that.  And certainly Mr. McGuire is available to discuss those matters with you.

Thank you very much, ladies and gentlemen. You may be excused.

MR. PEREZ:  Thank you, Your Honor.

**(Recessed at 9:22 a.m.)**

**COURT REPORTER'S CERTIFICATE**

I, Johnny C. Sanchez, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/_____
Johnny C. Sanchez, CRR, RMR