## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-10-459-S** |
| | § | |
| **MAURICIO MERCADO** | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Jill Jenkins Stotts and Ruben R. Perez, Assistant United States Attorneys, and James B. Nelson, Trial Attorney, with the Department of Justice and Defendant, Mauricio Mercado and Defendant's counsel Charles Flood, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count I of the Superseding Indictment. Count I charges Defendant with Conspiracy to Harbor Illegal Aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i), is a term of imprisonment of not more than ten (10) years and a fine of not more than $250,000.00. Additionally, Defendant

may receive a term of supervised release after imprisonment of up to three (3) years, Title 18, United States Code, §§ 3559(a) and 3583(b). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation, Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.      Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5.     The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 22 of this agreement.  Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.     Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the

3

grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation.

(f)     Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Agreement and that he cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal

7.     Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed, or the manner in which the sentence was determined. Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to contest his conviction or sentence by means of any post-conviction proceeding. In the event the Defendant files a notice of appeal following the imposition of the sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

8.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his guilty plea** and is binding on neither the United States, the Probation Office, nor the Court.

4

The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.      Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

10.      The United States agrees to each of the following:

(a)      At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2)- level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

(b)      If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States may move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense.

(c)      If the Defendant seeks to obtain an S-VISA and/or adjustment of status, the United States agrees that it will certify that the Defendant has cooperated with the Government so long as: the Defendant continues to persist in his plea through sentencing, continues to fully cooperate with the United States, and continues not oppose the forfeiture of assets contemplated in paragraph 22 of this agreement.

### Agreement Binding - Southern District of Texas Only

11.      The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment. This

Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(a) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the

discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

### Rights at Trial

14.    Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15.    Defendant is pleading guilty because he is guilty of the charges contained in Count I of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Between approximately November 2005 and November 2006, the defendant and his co-defendants engaged in the harboring and transporting of persons the defendant believed to be illegal aliens, who were in fact illegal aliens, from Houston, Texas, to places outside the state of Texas. The defendant worked for and was paid by Wilmar Rene Duran, who was the owner of Transportes Junior's, and who operated a warehouse in Houston where aliens were held until they were to be transported across the United States.

The government's evidence would prove that the aliens were from various countries, and entered the United States through Mexico. Duran employed co-defendant Rodriguez and co-defendant Bolanos to guard the aliens and hold them at a warehouse in Houston, Texas, until they made the smuggling payment.

During the course of the defendant's involvement in this conspiracy, the defendant drove alien passengers from Houston to destinations outside of Texas. On each occasion, Duran always arranged to meet the defendant late at night, usually at midnight, and generally arrived in the early morning hours. Defendant did not know where the Transportes Junior business was located, and always met Duran in the Hillcroft and Bellaire area of Houston. Duran generally arrived at the scheduled meeting in his personal car, and another employee of Duran's drove the van filled with passengers. On one occasion, Duran's sister, Judith Lopez, delivered the van full of passengers. Duran provided the defendant with a manifest for each trip. Duran also provided the defendant with insurance and Department of Transportation paperwork in the name of "Transportes Junior." The manifest identified each passenger, their destination, contact information for their family, and what, if any, amount was still owed by the family upon delivery of the passenger. Generally, approximately half of the passengers were pre-paid, and the other half required the defendant to collect additional money upon delivery. Duran told the defendant that the payment amount on the manifest was listed in code, and did not represent the true amount owed by the family members. In order to determine the true amount owed, defendant was to drop the first number and add a zero to the end of the number. For example, if the manifest said the family owed $250 for transportation, the actual amount that the defendant was to collect was $500. The defendant collected the money owed for each alien passenger and gave that money to Duran upon his return from each trip. Duran usually paid the defendant $600 for each trip. The United States' evidence would show that the defendant transported between 25 and 99 passengers during he was employed by co-defendant Duran.

Defendant heard about instances of verbal and physical abuse, to the illegal aliens being held at the warehouse in Houston, committed by Duran and his co-defendants, from passengers. During a trip in November 2006, the defendant heard passengers complaining of severe beatings while they were being held at the warehouse in Houston, Texas. During that trip in November 2006, the Defendant, upon transporting a passenger to his drop-off location, was approached by numerous family members who were angry about the abuse that occurred at the warehouse in Houston. The angry mob of family members wanted to hurt the Defendant. The passenger explained to the family members that the Defendant was not involved in the beatings.

After leaving the location, the Defendant called Wilmar Duran to confront him about the angry family members and the beatings. When the Defendant spoke with Duran, Duran did not seem surprised about the phone call about the angry mob of family members and apologized to

the Defendant.  The Defendant asked Duran how he could have done that to him (speaking about sending him into a dangerous situation during the transport) and knew from Duran's tone of voice that he was guilty of the killing the two illegal aliens.  The Defendant asked Duran "why he did it" and Duran initially remained quiet.  The defendant then informed Duran that passenger Perez had informed him about the killing of the two illegal aliens and Duran told the Defendant that the two deceased illegal aliens were going to harm his kid inside the warehouse.

### Breach of Plea Agreement

16.     If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

17.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.  Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United

States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

21. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Forfeiture**

22. Defendant agrees to forfeit all property that constitutes, or is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of the offense charged in Count I of the Superseding Indictment and all property that was used to facilitate, or

was intended to be used to facilitate, the commission of the offense charged in Count I of the Superseding Indictment.

23.    Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24.    Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

25.    Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.  Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.  Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

26.    This written Plea Agreement, consisting of 13 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and his counsel.  No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement.  Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

11

27.    Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _December 20_, 2016.

_____
Defendant-Mauricio Mercado

Subscribed and sworn to before me on _December 20_ , 2016.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By:    _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By:

_____
Jill Jenkins Stotts
Assistant United States Attorney
Southern District of Texas
Telephone: 713-567-9691
Facsimile: 713-718-3301

_____
Charles Flood
Attorney for Defendant

_____
Ruben R. Perez
Assistant United States Attorney

_____
James B. Nelson
Trial Attorney
Department of Justice

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL NO. H-10-459-S |
| | § | |
| MAURICIO MERCADO | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____
Attorney for Defendant

12/20/16
Date

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____
Defendant-Mauricio Mercado

12/20/16
Date

13