UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA      .    4:10-CR-00459-6

VERSUS                        .    HOUSTON, TEXAS

MAURICIO MERCADO             .    DECEMBER 20, 2016

. . . . . . . . . . . . . . .    9:00 A.M.


TRANSCRIPT OF REARRAIGNMENT
BEFORE THE HONORABLE KENNETH M. HOYT
UNITED STATES DISTRICT JUDGE


*APPEARANCES*


FOR THE GOVERNMENT:

    Ruben R. Perez
    Assistant United States Attorney
    1000 Louisiana
    Suite 2300
    Houston, Texas  77002


FOR THE DEFENDANT:

    Charles T. Flood
    FLOOD AND FLOOD
    914 Preston
    Suite 800
    Houston, Texas  77002


Mayra Malone, CSR, RMR, CRR
malonereporting.com

*APPEARANCES - CONTINUED*


OFFICIAL COURT REPORTER:

    Mayra Malone, CSR, RMR, CRR
U.S. Courthouse
515 Rusk, Room 8004
Houston, Texas   77002


Proceedings recorded by mechanical stenography.   Transcript produced by computer-aided transcription.

- - - - -

**PROCEEDINGS**

THE COURT:  Good morning, gentlemen.

MR. PEREZ:  Good morning.

THE COURT:  This is Cause Number 2010-459.  We are proceeding on a superseding indictment, right?

MR. PEREZ:  Yes, Your Honor.

THE COURT:  That charges the defendant here with conspiracy to harbor aliens, a violation of federal law under multiple sections and subsections of that statute under Title 18.

It is my understanding that the defendant wishes to plead guilty in the case of United States of America versus Mauricio Mercado.

Who is here on behalf of the United States?

MR. PEREZ:  Rubin Perez on behalf of the United States of America, Your Honor.

THE COURT:  On behalf of Mr. Mercado?

MR. FLOOD:  Good morning, Your Honor.  Charles Flood for Mr. Mercado.

THE COURT:  What is your name, sir?

THE DEFENDANT:  Mauricio Mercado, Your Honor.

THE COURT:  It is my understanding, sir, that you are prepared to enter a plea of guilty pursuant to a plea agreement to the charge of conspiracy to harbor illegal aliens.  Is that true?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Would you raise your right hand and take an oath?

*(Defendant sworn)*

THE COURT:  You have told me that your name -- I'm sorry.  I did not turn my microphone on.

You told me that your name is Mauricio Mercado?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I'm pretty close.  Are you known by any other names?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  How old are you, sir?

THE DEFENDANT:  Forty-four, Your Honor.

THE COURT:  And how far did you go in school?

THE DEFENDANT:  I'm sorry?

THE COURT:  How much school did you attend?

THE DEFENDANT:  High school, Your Honor.

THE COURT:  High school.  Was that in Mexico?

THE DEFENDANT:  No, sir.  Here.

THE COURT:  In the U.S.?

THE DEFENDANT:  Yes, sir.

THE COURT:  And did you graduate?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  You have taken an oath to give truthful answers to the questions that are being asked.  You

understand that to give false answers or to mislead the Court could result in a separate offense, even revocation of a judgment, for example, in this plea agreement.  If there is some finding that you have misled the Court or misled the Department of Justice, that could result in a forfeiture of any agreement that you might have and perhaps even additional charges or crimes.

Do you understand the seriousness of the events here?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Have you ever been treated for drug addiction or alcohol dependency?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How about mental illness?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you taking any medication today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  You are represented by an attorney here. What is his name?

THE DEFENDANT:  Charles Flood.

THE COURT:  All right.  And he has been representing you for some time; has he not?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have he and you come to some understanding based on his advice to you regarding this plea of guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you satisfied with the representation that he is providing for you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any complaints or concerns that you need to bring to my attention?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Counsel, can you vouch for the mental ability for your client, Mr. Mercado, to enter a plea?  In other words, is he mentally competent to enter a plea of guilty?

MR. FLOOD:  Your Honor, he is mentally competent.  We have gone over the agreement and he does understand it.

THE COURT:  Okay.  I'm sorry.  In going over the agreement, you probably also discussed with him outside of the agreement or apart from the agreement not just the penalties associated with this conviction but also the supervised release term, if any imprisonment term is entered in this case, and other consequences of entering a plea of guilty, to include the possibility, whether it is some other court or not, that he could be deported from the United States?

MR. FLOOD:  Yes, Your Honor.

THE COURT:  And I take that to mean that his status here in the United States is not a citizenship status.  It is some other status?

MR. FLOOD:  That's correct, Your Honor.

THE COURT:  All right.  The charge of conspiracy to harbor an illegal alien would require the government to prove certain elements of that crime, or whatever crimes are charged, beyond a reasonable doubt.  And that is a throwback to our federal constitution, saying that under the Fourth Amendment you have a right to be free from unreasonable searches or seizures, a right to be free from government conspiracies to convict you or to mistreat you or to do something that is illegal.  Those are the kinds of arguments and claims that you could make under the Fourth Amendment.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And under the Fifth Amendment, your right to remain silent means you do not have to give testimony and would not be required to give testimony were you to go to trial.  That Fifth Amendment is a right that you have, even though you are not a citizen of the United States.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And finally, under the Sixth Amendment, you have a right to a trial by jury and to require that the government prove each of the elements -- and I'm going to go over them with you in just a minute -- to prove those beyond a reasonable doubt.  That Sixth Amendment right also guarantees a trial by jury and counsel.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you also understand that when you enter a plea of guilty, however, you are waiving your rights under the Fourth, Fifth and Sixth Amendments?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is that what you want to do?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that's something that you have talked to your attorney about, I gather, correct?

THE DEFENDANT:  Correct, Your Honor.

THE COURT:  And he is not forcing you or no one has threatened you to enter this plea of guilty, have they?

THE DEFENDANT:  No, sir.

THE COURT:  You are doing this of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Let me go over the elements of conspiracy and elements of harboring illegal aliens and then I might have some questions for you.

If the government were to proceed to trial in this case, the government would be required to show that you and at least one other person agreed to commit the crime of harboring illegal aliens.  That you knew of the unlawful purpose of the agreement but you joined in it anyway.  That is, you voluntarily and willfully engaged in this unlawful conduct for this unlawful purpose.  And that one of the conspirators,

either yourself or someone else working with you, knowingly committed some act, any act that might be described in the indictment that was intended to accomplish the objectives of the conspiracy.  That's part of what the government needs to prove.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  To link that up with harboring illegal aliens, the government would also need to supplement their proof with evidence that the aliens that you allegedly were harboring entered and remained in the United States under your, I guess, authority or supervision or at your behest.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that you concealed, harbored or shielded them from detection by the United States authorities, that you either knew or acted recklessly with -- disregarding that the aliens had entered and remained in the United States in violation of federal law and that you conducted -- I'm sorry -- that your conduct substantially facilitated the aliens, those persons that you were harboring, remaining in the United States illegally.

That's what the government needs to prove to establish the elements of harboring illegal aliens.

Do you understand that, as well, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, understanding that the government has to prove not just that there was a conspiracy and agreement to harbor illegal aliens but these underlying elements need to be proved as well.

Do you still want to go forward with your plea of guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The penalty associated with this offense is a term of confinement of not more than 10 years imprisonment and/or a fine not to exceed $250,000.  Any term of imprisonment may be followed by a term of supervised release, the maximum term of which would be three years.  And it would be during that term, assuming that you are in the United States, that you would be under the supervision of the Court and required to not violate the law.  That is, to violate the law or to violate any term or condition of supervised release subjects you to the possibility of revocation of supervised release and then being sent back to prison to serve an additional -- some additional term of confinement of up to two years.  That you understand as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And finally, there is a special assessment or a court cost in the amount of $100 that must be paid in addition to any fine that might be imposed.  That, as well, you have been told?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  A consequence, not necessarily a penalty but a consequence of entering a plea of guilty could result in your having to meet with Homeland Security and they certainly could arrest you and -- or seize you and deport you from the United States.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In spite of the possibility of prison term and deportation and the fine and all of those consequences and any other consequences of entering a plea of guilty, you still want to go forward?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Then I'm going to ask Mr. Perez if he would state for the record the factual basis underlying the plea and I believe -- let me just double check -- I believe the factual basis or summary of it might be set forth in the plea agreement that you intend to enter into starting at page seven and going up through -- not through but to and including part of page nine.  You may watch it there on your own paperwork or listen carefully.

Mr. Perez?

MR. PEREZ:  Your Honor, if this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.  The following facts, among others, would be offered to establish the defendant's guilt:

Between on or about approximately November 2005 and November 2006, the defendant and his co-defendants engaged in the harboring and transporting of persons the defendant believed to be illegal aliens, who were, in fact, illegal aliens from Houston, Texas, to places outside the state of Texas.  The defendant worked for and was paid by Wilmar Rene Duran, who was the owner of Transportes Juniors and who operated a warehouse in Houston, Texas where aliens were held until they were transported across the United States.

The government's evidence would further prove that the aliens were from various countries and entered the United States through Mexico.  Duran employed co-defendant Rodriguez and co-defendant Bolanos to guard the aliens and hold them at a warehouse in Houston, Texas until they made the smuggling payment.

During the course of the defendant's involvement in this conspiracy, the defendant drove alien passengers from Houston, Texas to destinations outside of Texas.  On each occasion, Duran always arranged to meet this defendant late at night, usually at midnight, and generally arrived in the early morning hours.  Defendant did not know where the Transportes Junior business was located and always met Duran in the Hillcroft and Bellaire area of Houston, Texas.  Duran generally arrived at the scheduled meeting in his personal car and another employee of Duran's drove the van filled with

passengers.  On one occasion, Duran's sister, Judith Lopez, delivered the van full of the passengers.  Duran provided the defendant with a manifest for each trip.  Duran also provided the defendant with insurance and Department of Transportation paperwork in the name of Transportes Junior.  The manifest identified each passenger, their destination, contact information for their family and what, if any, amount was still owed by the family upon delivery of their passenger.  Generally, approximately half the passengers were prepaid and the other half required the defendant to collect additional money upon delivery.  Duran told the defendant that the payment amount on the manifest was listed in code and did not represent the true amount owed by the family members.  In order to determine the true amount owed, defendant was to drop the first number and add a zero to the end of the number.  For example, if the manifest said the family owed $250 for transportation, the actual amount that the defendant was to collect was $500.  The defendant collected the money owed for each alien passenger and gave that money to Duran upon his return from each trip.  Duran generally -- usually paid the defendant $600 for each trip.  The United States' evidence would show that the defendant transported between 25 and 99 passengers during the time he was employed by co-defendant Duran.

Defendant heard about instances of verbal and physical abuse to the aliens being held at the warehouse in

Houston, committed by Duran and his co-defendants, from passengers.  During a trip in November 2006, the defendant heard passengers complaining of severe beatings while they were being held at the warehouse in Houston, Texas.  During that trip in November 2006, the defendant, upon transporting a passenger to his dropoff location, was approached by numerous family members who were angry about the abuse that occurred at the warehouse in Houston.  The angry mob of family members wanted to hurt this defendant.  The passenger explained to the family members that the defendant, this defendant, was not involved in the beatings.

After leaving the location, the defendant called Wilmar Duran to confront him about the angry family members and the beatings.  When the defendant spoke with Duran, Duran did not seem surprised about the phone call about the angry mob of family members and apologized to the defendant.  The defendant asked Duran how he could have done that to him, speaking about sending him into a dangerous situation during the transport, and he knew from Duran's tone of voice that he was guilty of the killing of the two illegal aliens.  The defendant asked Duran why he did it and Duran initially remained quiet.  The defendant then informed Duran that passenger Perez had informed him about the killing of the two illegal aliens and Duran told the defendant that the two deceased illegal aliens were going to harm his kid inside the warehouse.

THE COURT: All right. Did you hear that, Mr. Mercado?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are those facts essentially true in substance?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In fact, you did engage in the activity of conspiring or agreeing with Duran and perhaps others to harbor illegal aliens by your conduct; did you not?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counsel, do you know of any reason why your client should not enter a plea of guilty to the charge of conspiracy to harbor aliens?

MR. FLOOD: No, Your Honor.

THE COURT: And I gather you have discussed with him and provided to him a copy of the plea agreement that I gather you and he propose to enter into this morning?

MR. FLOOD: Yes, Your Honor.

THE COURT: And you have gone over that with him, as well?

MR. FLOOD: I have, Your Honor. One thing I do want to add -- I don't know if this is the right time or not. As the Court is well aware, there are deaths, multiple deaths involved in this case. The facts underlying Mr. Mercado's crimes don't overlap with that death. In other words, the

deaths of those individuals are not the result of or caused by his conduct. I just want the Court aware of that and I think we --

THE COURT: I think that the factual basis makes that fairly clear. That he heard about it, he came into some knowledge, confronted Duran about it and came to the conclusion that Duran was the actor, either by Duran's response or lack of response. Whatever the circumstance, I understand that --

MR. FLOOD: Is that right, Rubin?

MR. PEREZ: We have no evidence that Defendant Mercado had anything to do with the killings at the warehouse.

THE COURT: I understand that.

MR. PEREZ: At this time.

THE COURT: To the charge of conspiracy to harbor illegal aliens, let me ask you, how do you plead to that charge? Guilty or not guilty?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: All right. I understand that you are entering into a plea agreement. I'm going to ask Mr. Perez if he would summarize the terms of that plea agreement, and then I will have some questions perhaps to ask.

MR. PEREZ: Yes, Your Honor. At the time of sentencing, the United States agrees not to oppose the defendant's anticipated request to the Court and the United States Probation office that he receive a two-level downward

adjustment under the guidelines should defendant accept responsibility as contemplated by the sentencing guidelines.

If the defendant qualifies for an adjustment under the guidelines and the defendant's offense level is 16 or greater, the United States may move for an additional one point downward adjustment based on the timeliness of the plea or the expeditious manner in which defendant provided complete information regarding his role in the offense.

This defendant also carries a potential for a United States Sentencing Guideline Section 5K1.1 for substantial assistance.  The defendant also waives his right to appeal.  The defendant also waives the right to collaterally attack his conviction.

Also, the -- if the defendant seeks to obtain an S visa or adjustment of status, the United States agrees that it will certify that the defendant has cooperated with the United States so long as the defendant continues to persist in his plea through sentencing, continues to fully cooperate with the United States and continues not to oppose a forfeiture of assets contemplated in paragraph 22 of this agreement.

THE COURT:  Did you hear that summary of the terms of the plea agreement, Mr. Mercado?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are those terms as they are set forth in the written document the terms of the plea bargain that you

have entered into or are entering into with the United States?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No one has promised you anything beyond what is set forth in this document, correct?

THE DEFENDANT: Correct, Your Honor.

THE COURT: In other words, no one promised you that if you would enter a plea of guilty, there would be some special treatment or pardon or some special sentence that would be imposed in this case?

THE DEFENDANT: No, Your Honor.

THE COURT: And beyond your hope and desire to have what is called a 5K1 reduction of sentence presented to the Court, you understand that that 5K1.1 request and motion to the Court does not obligate the Court to absolutely have to give it to you? Do you understand that, as well?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Having said that, Counsel, let me ask you whether or not in your view what is said is consistent, let's say, with the terms of the plea agreement as far as you are concerned?

MR. FLOOD: It is consistent, Your Honor.

THE COURT: And there is no thing that you are aware of, no other bargain that you are aware of that is not reported or recorded in the plea agreement between the defendant and the government?

MR. FLOOD:  No, Your Honor.

THE COURT:  Okay.  Now, you have entered a plea of guilty in this matter.  Let me ask at this time -- I don't know who has it.

MR. PEREZ:  I have it.

THE COURT:  You have it?  Mr. Perez, I believe, has the original.  If you would pass that over to counsel for the defense and his client and if all parties would sign that document appropriately and pass it to the clerk, we will take an oath or at least an affirmation on the plea agreement.

*(The plea agreement is signed)*

THE COURT:  Everything is in order?  I'm going to ask you to raise your right hand again and make an affirmation regarding the plea agreement.

THE CASE MANAGER:  Have you read the plea agreement that you have just signed?

THE DEFENDANT:  Yes.

THE CASE MANAGER:  Are the matters and things contained in the form true and correct, to the best of your knowledge?

THE DEFENDANT:  Yes.

THE CASE MANAGER:  Have you signed it of your own free will?

THE DEFENDANT:  Yes.

THE CASE MANAGER:  Thank you.

THE COURT:  You may lower your hand.

Based on your plea of guilty to the charge to conspiracy to harbor illegal aliens and your statements, that is your testimony here in open court, as well as the information and affirmation contained in the plea agreement, the Court makes the following findings:  First, that you are mentally competent to enter this plea of guilty.  That a factual basis exists for the indictment or the superseded indictment that has been filed in this case.  That you are entering this plea of guilty freely and voluntarily.  You understand the nature of the charge pending against you and you understand the consequences, that is the penalty possibilities as well as other consequences.  Perhaps deportation.  You understand all of that.

Based on your plea of guilty, the Court finds you guilty as charged in the superseded indictment, and the Court is going to reset your case for sentencing to September 5 at 10:00 a.m.

These cases are being set -- this case is being set in parallel with other cases that are pending so that we might make sure we keep our hands and eyes on all of the balls -- I'm saying this perhaps for Mr. Perez's benefit, as well -- keep our eyes on the balls that are being juggled at this time.

All right.  Mr. Perez, anything else?

MR. PEREZ:  Not on behalf of the United States, Your Honor.

THE COURT:  Mr. Flood?

MR. FLOOD:  Nothing on behalf of the defendant, Your Honor.

THE COURT:  All right.  What is the nature of his bond at this time, Mr. Flood?

MR. FLOOD:  He is on bond.  I believe the government is unopposed to him staying on bond.

MR. PEREZ:  The government is unopposed to him staying on bond, Your Honor.

THE COURT:  You understand, Mr. Mercado, that the bond requires and has certain conditions?  Those conditions have not changed as a result of this plea of guilty and the Court's finding of guilty.

What you have to do is make sure you report to them appropriately.  Failing to do so could result in a revocation of bond.  Understood?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Thank you, sir.  You may be excused until September 5 at 10:00 a.m.

Thank you, gentlemen.

MR. PEREZ:  Thank you, Your Honor.  And thanks to your staff.  Merry Christmas.

MR. FLOOD:  Thank you, Your Honor.  Merry Christmas.

THE COURT:  Merry Christmas to you all.

* * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled cause.

Date: March 10, 2017

*/s/ Mayra Malone*
----------------------------------------
Mayra Malone, CSR, RMR, CRR
Official Court Reporter