UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 10-459 |
| EFRAIN RODRIGUEZ MENDOZA, Defendant. | § § § | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Jill Jenkins Stotts and Lisa M. Collins, Assistant United States Attorneys, and the defendant, Efrain Rodriguez Mendoza ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement for a specific sentence, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Second Superseding Indictment. Count One charges the Defendant with Conspiracy to Transport and Harbor Aliens in violation of Title 8, United States Code, Sections 1324 (a)(1)(A)(v)(I). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the second superseding indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for violation of Title 8, United States Code, Section 1324 (a)(1)(A)(v)(I) is life or a term of imprisonment for any term of years up to life and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised

release after imprisonment of up to five years. *See* Title 18, United States Code, sections 3559(a)(1) and 3583(b)(1). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from

Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute, to the extent such rights can be waived. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence not less than 28 and not more than 35 years' imprisonment in the Federal Bureau of prisons and a term of up to five (5) years supervised release shall be accepted or rejected by the Court according to Federal Rule of Criminal Procedure 11(c)(1)(C). Defendant further understands that if the court accepts the

agreement, he shall receive a term of not less than 28 and not more than 35 years' imprisonment in the Federal Bureau of prisons and a term of up to five (5) years supervised release. In the event that the Court rejects this Agreement, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

7. If the Court imposes a term of imprisonment within the agreed-upon range, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the Second Superseding Indictment, Defendant shall receive a term of term of imprisonment of not less than 28 years nor more than 35 years in the Federal Bureau of prisons and a term of up to five (5) years supervised release.

(b) The Government will dismiss the remaining counts of the second superseding indictment and all counts in the prior indictments at the time of sentencing.

## Agreement Binding - Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in any of the indictments in this case. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement to the attention of other prosecuting offices, if requested.

## United States' Reservation of Rights

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

   (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

   (b) to set forth or dispute sentencing factors or facts material to sentencing;

   (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office; and

   (d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

   (e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements by the court, which are only advisory, as well

as the provisions of Title 18, United States Code, section 3553(a). At the time of sentencing, this Office and the Defendant agree to request a combined total term of imprisonment as to Count One within the range of not less than 336 months (28 years) and not more than 420 months (35 years). Defendant nonetheless acknowledges and agrees that the Court has authority to impose a sentence as described previously after Defendant pleads guilty, and that, if the Court accepts this agreement, the sentence within this range is within the sole discretion of the sentencing judge. If the Court indicates it will not accept the agreement, or imposes any term of imprisonment, other than discussed above, Defendant and/or the United States can withdraw from the agreement and neither party will be bound to fulfill the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count One of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

From sometime prior to November 2006 to on or about November 17, 2006, co-defendant, Wilmar Rene Duran Gomez "Duran", defendant, Efrain Rodriguez-Mendoza "Rodriguez-Mendoza," (real name Vincente Garduno) and co-defendant, Jose Alberto Bolanos "Bolanos", engaged in a scheme together, and with others, to harbor illegal aliens in Houston, Texas, and transport them to locations both within Texas and throughout the United States, for the purpose of financial gain. In the course of that scheme, the Defendant and co-defendants, Duran and Bolanos caused the death of two illegal aliens, Hector LNU and Abelardo Sagastume.

Duran operated a transportation business at a warehouse in Houston, Texas and within the Southern District of Texas where illegal aliens were held until their smuggling fees were paid and/or transportation was arranged for their transport across Texas and throughout the United States. Bolanos and Rodriguez-Mendoza worked as "guards" at the warehouse.

On or about November 6, 2006, a number of aliens who the defendants knew had recently entered the United States illegally, including Abelardo Sagastume, arrived at the warehouse in Houston. Bolanos and Rodriguez met the vehicle when it arrived on November 6, 2006, and opened the overhead garage door so the vehicle could pull in and unload the aliens. Hector LNU and other illegal aliens were already at the warehouse on November 6, 2006.

On or about November 7, 2006, there was a fire inside the bathroom of the warehouse. Bolanos and Rodriguez-Mendoza loaded the aliens into two vans. Bolanos drove one of the vans and Rodriguez-Mendoza drove the other van outside of the warehouse, and parked and waited to see if firefighters or police would arrive. When they unloaded the vans, Bolanos and Rodriguez-Mendoza initially put all the illegal aliens into a single room and then later separated the aliens into a "paid group" and "unpaid group" The "unpaid" group included Hector LNU and Abelardo Sagastume, as well as other aliens. According to witnesses, when Duran arrived to the warehouse, Rodrigeuz Mendoza and Bolanos pointed him to three "unpaid" aliens who they suspected were responsible for the fire. Those three aliens were brought to the garage where Duran and Bolanos each struck or kicked the aliens. After this, the three aliens were returned to the

7

"unpaid" room. Sometime after this Duran and Rodriguez-Mendoza entered the room where the unpaid group of aliens were and began to kick the aliens on their arms, legs, chests and backs. Afterward, the three defendants left the room. According to witnesses, Bolanos and Rodriguez-Mendoza were ordered not to give the aliens any food or water, or allow them to use the restroom. The defendants returned to the room with the unpaid group later in the day and continued their assault on the illegal aliens.

Over the course of a week, Duran returned to the warehouse on more than one occasion and, according to some witnesses, together with Rodriguez-Mendoza, would assault the "unpaid group" who were sometimes naked, sometimes had their hands bound, and were sometimes beaten. Bolanos made calls to the aliens' families in order to demand payment of smuggling fees. Bolanos would advise the aliens' families that the aliens were being beaten and if their fees were not paid they would be killed. At least two aliens who paid their fees were then sent to the "paid room" and later released to family members.

Between on or about November 7, 2006 and on or about November 14, 2006, the defendants, continued to assault the illegal aliens focusing on Alberto Sagastume and Hector LNU as they were the ones who were determined to have started the fire, and who later planned a second escape.

Over the course of the week of beatings, the assaults escalated against all the illegal aliens but even more against Albelardo Sagastume and Hector LNU.

Hector LNU and Abelardo Sagastume were beaten until they ultimately died on or about November 14, 2006. The defendants Bolanos, Duran, and Rodriguez-Mendoza went into the room where Hector LNU and Abelardo Sagastume were being held and Rodriguez-Mendoza pressed on the chest of Hector to see if he was really dead. Later, Rodriguez-Mendoza went back into the room and returned, stating the other alien had also died.

After their deaths, each of the defendants took part in wrapping the two dead bodies (Alberto Sagastume and Hector LNU) in blankets. Each of the defendants also helped load the bodies into a pick-up truck. Rodriguez-Mendoza doused the bodies with gas once they were inside the truck. Rodriguez-Mendoza and another individual drove the truck containing Hector and Abelardo Sagastume's bodies. Bolanos drove another vehicle and was instructed by Duran to pick up Rodriguez-Mendoza and the other individual after they disposed of the truck. The vehicles left the warehouse in tandem, all following a third vehicle driven by Duran. Duran drove to a field in Fort Bend County, Texas. Rodriguez-Mendoza attempted to light the truck on fire, but it did not burn. Rodriguez-Mendoza and the other individual left the truck containing the bodies and got into the car driven by Bolanos. Rodriguez-Mendoza assured Duran via phone that the truck had erupted into flames. The victims' bodies were found inside the truck, in a field, in Fort Bend County.

## Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement.

## Fines

16. Defendant understands that the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

17. This written plea agreement, consisting of 11 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

18. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on December 12, 2024.

Efrein Rodriguez
Defendant

Subscribed and sworn to before me on December 12, 2024.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: Cynthia Horace
Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

By: _____
Jill Jenkins Stotts
Assistant United States Attorney
Southern District of Texas

_____
Victor Abreu
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 10-459 |
| EFRAIN RODRIGUEZ MENDOZA, Defendant. | § § | |

PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Second Superseding Indictment. I have reviewed the provisions of the United States plea agreement and I have fully and carefully explained to Defendant that he will receive a sentence of imprisonment of not less 28 years nor more than 35 years in the Federal Bureau of Prisons and up to five (5) years of supervised release upon acceptance of the plea by the court. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        12/12/2024
Victor Abreu                                              Date

I have consulted with my attorney and fully understand all my rights with respect to the Second Superseding Indictment and understand that my sentence shall be not less than 28 years nor more than 35 years in the Federal Bureau of Prisons and up to five (5) years of supervised release, if the court accepts the plea. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____        12/12/2024
Efrain Rodriguez Mendoza                        Date

11